PEOPLE v SEARS

Docket No. 45969. Submitted January 7, 1983, at Lansing.—Decided
     April 18, 1983.

     James W. Sears was convicted of possession of heroin with intent
     to deliver and of being an habitual offender, fourth offense,
     Ingham Circuit Court, Thomas L. Brown, J. Defendant appeals,
     alleging several errors. *Held:*

          1. The trial court did not err in finding that defendant's
     statements to the police following his arrest were voluntary
     and, therefore, admissible. The proper standard for a finding of
     voluntariness at a *Walker* hearing is that of a preponderance of
     the evidence.

          2. Cross-examination of the defendant regarding prior convic-
     tions, evidence of which was inadmissible because the convic-
     tions were obtained more than ten years previously, was im-
     proper. The error was harmless, however, because, absent the
     evidence of those convictions, it was not reasonably possible
     that one jury member might have voted to acquit the defen-
     dant.

          3. Under the facts of this case, it was not improper for the
     prosecutor to charge the defendant under the habitual offender
     statute as a fourth felony offender rather than under the
     sentence-augmentation provisions applicable to persons con-
     victed of a major controlled substance offense.

          4. The defendant waived his claim of error based on the

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 582, 584, 587.
     Admissibility of pretrial confession in criminal case—Supreme
          Court cases. 1 L Ed 2d 1735.
     Constitutional aspects of procedure for determining voluntariness of
          pretrial confession. 1 ALR3d 1251.
[2] 29 Am Jur 2d, Evidence § 588.
[3] 81 Am Jur 2d, Witnesses § 577.
     Right to impeach credibility of accused by showing prior conviction,
          as affected by remoteness in time or prior offense. 67 ALR3d 824.
[4] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 6.
[5] 47 Am Jur 2d, Jury §§ 218, 241.
[6] 75 Am Jur 2d, Trial § 583.

number of peremptory challenges to prospective jurors he was allowed by failing to exercise any of the peremptory challenges he was allowed.

5. The defendant's request for jury instructions on lesser included offenses was not timely and, therefore, was properly denied.

Affirmed.

1. CRIMINAL LAW — APPEAL — VOLUNTARINESS OF DEFENDANT'S STATEMENT.

The Court of Appeals reviews a lower court's determination of the voluntariness of a defendant's statements to the police by looking at the totality of circumstances and will not reverse the trial court's finding unless it is clearly erroneous or the Court of Appeals is left with a definite and firm conviction that a mistake has been made.

2. CRIMINAL LAW — VOLUNTARINESS OF DEFENDANT'S STATEMENT — BURDEN OF PROOF.

The prosecution bears the burden of proving the voluntariness of a defendant's statements to the police following his arrest; the applicable standard of proof is that of a preponderance of the evidence.

3. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS.

A defendant's testimony may not be impeached by use of evidence of convictions obtained more than ten years previously (MRE 609[b]).

4. CRIMINAL LAW — HABITUAL OFFENDERS — SENTENCE AUGMENTATION.

A prosecutor has the discretion to proceed against a defendant under the statute which would impose the greatest possible punishment where the choice is to proceed under the habitual offender statute or under the sentence-augmentation provision applicable to major controlled substance offenders (MCL 333.7401, 769.12; MSA 14.15[7401], 28.1084).

5. CRIMINAL LAW — JURY — PEREMPTORY CHALLENGES — WAIVER OF CLAIM.

A defendant who fails to exercise any of the peremptory challenges to prospective jurors he is permitted by the trial judge waives any claim of error regarding the number of challenges he should have been allowed to exercise.

6. CRIMINAL LAW — JURY INSTRUCTIONS — TIMELINESS OF REQUEST.

Timeliness in requesting a jury instruction on a lesser included

offense is a factor in determining the appropriateness of giving the instruction.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Janis L. Blough,* Chief Appellate Attorney, and *Charles L. Toy,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett),* for defendant on appeal.

Before: ALLEN, P.J., and BRONSON and WAHLS, JJ.

WAHLS, J. Defendant was convicted by a jury of possession with intent to deliver heroin, MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), and as an habitual offender, fourth felony, MCL 769.12; MSA 28.1084. Sentenced to a prison term of from 15 to 30 years, defendant appeals as of right.

Following a *Walker* hearing *[People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965)], the trial court held that, while it was a "very difficult situation", the "greater weight" of the evidence showed defendant's statements to the police following his arrest to be voluntary and that the same were therefore admissible. Defendant contends, however, that in Michigan the prosecutor's burden is to prove voluntariness beyond a reasonable doubt rather than, as was the case here, by a preponderance of the evidence.

This Court reviews a lower court's determination of voluntariness by looking at the totality of circumstances and will not reverse a trial court's finding unless it is clearly erroneous or unless this Court is left with a definite and firm conviction that a mistake has been made. *People v Dean,* 110

Mich App 751, 754; 313 NW2d 100 (1981). The prosecution bears the burden of proving voluntariness. *People v White,* 401 Mich 482, 494; 257 NW2d 912 (1977). At issue here is the nature of that burden, a question heretofore not addressed by this or the Supreme Court.

The United States Supreme Court, in *Lego v Twomey,* 404 US 477; 92 S Ct 619; 30 L Ed 2d 618 (1972), held that, as a matter of federal constitutional law, the burden of proof applicable to the issue of the voluntariness of a confession is that of a preponderance of the evidence. In rejecting the proof beyond a reasonable doubt standard, however, the Court indicated that the individual states are free, pursuant to their own law, to adopt a "higher standard".

As defendant points out, approximately ten states have adopted a proof beyond a reasonable doubt standard. See Comment, *Jailhouse Confessions: The Need to Prove Their Voluntariness Beyond a Reasonable Doubt,* 12 U S F L Rev 331, 347-353 (1975), see *e.g., People v Jimenez,* 21 Cal 3d 595; 147 Cal Rptr 172; 580 P2d 672 (1978). We decline, however, to hold that a more stringent standard of proof applies under Michigan law to *Walker* hearings. If such a rule is to be formulated, we conclude, in the absence of Michigan law to support defendant's position, that it is within the province of the Michigan Supreme Court to do so. *Cf. People v Mosley (On Remand),* 72 Mich App 289, 291-292; 249 NW2d 393 (1976), *aff'd on other grounds* 400 Mich 181; 254 NW2d 29 (1977), *cert den* 434 US 861; 98 S Ct 189; 54 L Ed 2d 135 (1977).

Defendant next asserts that the trial court erred reversibly by allowing the prosecutor to cross-examine the defendant regarding his 1965 conviction

for carrying a concealed weapon and his "first trip to prison", in 1956, for an unspecified offense which was described only as being unrelated to drugs. Evidence of these convictions was inadmissible for impeachment purposes under MRE 609 as their use was barred by the ten-year rule. MRE 609(b).

The prosecutor argues, however, that defense counsel "opened the door" to such cross-examination by eliciting from defendant the fact that he had often been in trouble due to his drug use, including a 1964 conviction for possession of marijuana. The prosecutor argues that defense counsel had attempted to falsely portray that all of defendant's difficulties with the law were solely the result of his misuse of drugs, and that the cross-examination was proper to show defendant's past difficulties with the law had not originally or all been drug-related.

We agree with defendant that this line of cross-examination was improper. Assuming *arguendo* that the fact that not all of defendant's troubles were drug-related would have been admissible to rebut a claim to the contrary, see MRE 404(a)(1), neither defendant nor defense counsel actually implied that all of his troubles were drug-related. Defense counsel merely inquired of defendant when his drug problem began.

We believe, however, that while the cross-examination was improper, it was harmless error. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972); *People v Swan,* 56 Mich App 22, 31-34; 223 NW2d 346 (1974). Defense counsel revealed to the jury that defendant had an extensive criminal record. We do not think that, absent revelation of the two other non-drug-related convictions to the jury, it is reasonably possible that one jury member might have voted to acquit the defendant.

Defendant next argues that the prosecutor improperly charged defendant as an habitual offender based on prior drug-related offenses rather than under the more specific augmentation statute of the controlled substances act, MCL 335.348; MSA 18.1070(48). The latter statute was repealed by 1978 PA 368, and replaced by MCL 333.7413; MSA 14.15(7413), effective September 30, 1978, after defendant was arrested and charged, but before his trial.

The sentence-augmentation statute provided, prior to September 30, 1978, as follows:

"Sec. 48. (1) Any person convicted of a second or subsequent offense under this act may be imprisoned for a term up to twice the term otherwise authorized or fined an amount up to twice that otherwise authorized, or both.

"(2) For purposes of this section, an offense is considered a second, or subsequent offense, if, prior to his conviction of the offense, the offender has at any time been convicted under this act or under any statute of the United States or of any state relating to narcotic drugs, marihuana, depressant, stimulant or hallucinogenic drugs." MCL 335.348; MSA 18.1070(48).

The statute was replaced in part by 1978 PA 368, effective September 30, see MCL 333.7401; MSA 14.15(7401). Defendant faced a maximum prison term of life under the habitual offender statute, in contrast to a maximum possible term of 40 years under the sentence-augmentation provision.

The habitual offender statute in effect at the time of defendant's arrest made no reference to the sentence augmentation statute as amended by 1978 PA 77, effective September 1. However, the habitual offender statute now expressly provides that if the fourth felony is a "major controlled substance offense" the person shall be punished by

the controlled substances sentence-augmentation statute.

In *People v Edmonds,* 93 Mich App 129; 285 NW2d 802 (1979), *lv den* 408 Mich 918 (1980), the defendant had been convicted of delivery of heroin and of being a third-felony offender. Since one of his prior convictions was drug-related, this was his second conviction under the controlled substances act. The trial court then, using *both* the sentence-augmentation provision of the controlled substances act *and* the third-felony offender provision of the habitual offender statute, sentenced the defendant to a prison term of 53 years 4 months to 80 years. This Court, in *Edmonds, supra,* p 135, stated:

"We next consider the propriety of the lower court's use of both the habitual offenders statute, MCL 769.11; MSA 28.1083, and § 48 of the controlled substances act, MCL 335.348; MSA 18.1070(48), to increase the maximum term for delivery of heroin from 20 to 80 years. We hold such sentence enhancement to be improper.

"The controlled substances act was enacted to regulate the control, manufacture, production, sale, possession, use, etc., of controlled substances, with penalties for violation of the act specifically delineated. As such the act represents this state's comprehensive policy toward the use of controlled substances. As a specific and comprehensive measure the act's sentence-augmentation provision controls over the general habitual offender statute. Accordingly the sentence on a second or subsequent drug offense is under the purview of § 48 of the controlled substance act exclusively. In accordance with the above the defendant's sentence is reduced to 26 years 8 months to 40 years." (Footnote omitted.)

In asserting that the prosecutor's use of the habitual offender, rather than sentence augmentation, statute was improper defendant relies on the above-quoted language in *Edmonds* and the "fun-

damental rule of statutory construction that when two statutes encompass the same subject matter, one being general and the other specific, the latter will control", *People v Shaw,* 27 Mich App 325, 326; 183 NW2d 390 (1970), *lv den* 385 Mich 760 (1971).

We conclude, however, that under the facts in this case, the prosecutor had discretion to charge defendant as an habitual offender, fourth felony. MCL 769.12; MSA 28.1084 does not cover the "same subject matter" as the sentence-augmentation statute and, accordingly, the rule stated in *Shaw* is inapplicable. See *People v Ford,* 417 Mich 66; 331 NW2d 878 (1982). Under the former statute a defendant must have four felony convictions, while under the latter he need have only two drug-related felony convictions.

Moreover, as the prosecutor points out, the 1978 amendment to the habitual offender statute expressly removes *only* "major controlled substance offenders" from the purview of that statute. Under the amended sentence-augmentation statute, major controlled substance offenders would receive mandatory terms of life imprisonment without possibility of parole. MCL 333.7413; MSA 14.15(7413). *Cf.* MCL 761.2; MSA 28.843(12), defining major controlled substance offenses. We agree that the Legislature intended that the prosecutor have discretion to proceed under the statute which would impose the greatest possible punishment.

Defendant claims that reversible error occurred when the trial court denied his request for 20, rather than 5, peremptory challenges. The habitual offender act provides for 5 peremptory challenges at the habitual offender trial while GCR 1963, 511.5 entitles a defendant to 20 peremptory challenges if the offense with which he is charged

is punishable by death or life imprisonment. A conviction as an habitual (fourth time) felony offender carries a maximum penalty of life imprisonment. There is currently disagreement among members of this Court as to whether a defendant who is charged as a fourth offender, for which the maximum penalty is life imprisonment, is entitled to 20 peremptory challenges. See *People v Ross,* 84 Mich App 218; 269 NW2d 532 (1978) (defendant not entitled to 20 peremptory challenges because habitual offender act does not create an offense to which GCR 1963, 511.5 applies), *contra, People v Van Auker,* 111 Mich App 478; 314 NW2d 657 (1981), *lv den* 413 Mich 879 (1982).

In the instant case, however, defendant failed to exercise *any* of the five peremptory challenges he was permitted by the trial court. Under these circumstances, we hold he has waived any claim of error regarding the number of challenges he should have been permitted to exercise. *Cf. People v Greene,* 42 Mich App 154; 201 NW2d 664 (1972) (objection to composition of the jury is waived if the objecting party fails to exhaust his peremptory challenges).

Defendant next asserts that reversible error occurred when the trial court denied his request, made after the jury was excused from the courtroom but before they were told to commence deliberations, for instructions on lesser included offenses, *i.e.,* second or third felony offender.

Timeliness in requesting a lesser included offense instruction is a factor in determining its appropriateness. *People v Rogers,* 411 Mich 202, 207-208; 305 NW2d 857 (1981). The Supreme Court, in *Rogers,* held that an oral request for lesser included offense instructions prior to the jury's release to begin deliberation was timely. The

people argue, and we agree, that the facts of *Rogers* are distinguishable. The request in *Rogers* was made at "the first available opportunity", the trial took place in one afternoon, and the trial court therein instructed the jury immediately after closing arguments.

In the instant case, the trial court devoted an entire day to motions concerning the supplemental information prior to the habitual offender trial. The lesser included offense instruction was not requested then. Trial was held on the next day, and it encompassed the better part of the day. Prior to closing arguments, the trial judge asked either party if they had prepared instructions, and the defendant did not at that time request the lesser included offense instruction. The defense request was not timely, and therefore the trial court did not err in refusing the same.

We find defendant's final claim of error to be void of merit. Although defendant was *convicted* on the same day of two of the felonies which underlay his habitual offender conviction, the convictions arose out of separate transactions occurring on separate days. *People v Ross,* 84 Mich App 218; 269 NW2d 532 (1978), upon which defendant relies, is therefore inapplicable. See *People v Chaplin,* 102 Mich App 748, 753-754; 302 NW2d 569 (1980), *rev'd on other grounds* 412 Mich 219; 313 NW2d 899 (1981).

Affirmed.